USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/9/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SALVADOR GOMEZ, *on behalf of himself*       :
*and all others similarly situated*,              :
                                                      :
                        Plaintiff,                   :
                                                      :     **OPINION & ORDER**
          -against-                               :
                                                      :     17-CV-213 (JLC)
TERRI VEGETARIAN LLC, *et al.*,             :
                                                      :
                        Defendants.              :
------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

In this wage-and-hour case, plaintiff Salvador Gomez has moved to enforce a court-approved settlement agreement and for entry of judgment against defendants Cochran and Pease LLC, Terri Vegetarian LLC, Terri 2 LLC, Terri 3 LLC, Craig Cochran, Jeffrey Lapadula, and Tomer Versano due to their alleged failure to pay the settlement amount.  To date, defendants Cochran and Pease LLC, Terri 2 LLC, Terri 3 LLC, and Craig Cochran have not responded to Gomez's motion.  However, defendants Terri Vegetarian LLC, Jeffrey Lapadula, and Tomer Versano have responded, contending that the Court lacks subject matter jurisdiction to enforce the settlement against them given their dismissal from the case and therefore it was unreasonable to include them in the motion.  Accordingly, they have cross-moved for sanctions.  For the reasons discussed below, (1) Gomez's motion to enforce the settlement agreement is granted in part and denied in part, and (2) defendants Terri Vegetarian LLC, Lapadula, and Versano's motion for sanctions is granted.

1

## I.  BACKGROUND

Gomez, a former employee of defendants Cochran & Pease LLC, Terri 2 LLC, Terri 3 LLC, and Craig Cochran ("Remaining Defendants"), brought this action under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Dkt. No. 1.[1]  On June 16, 2017, the Court certified a collective action.  Dkt. No. 45. After a year of litigation, the parties consented to my jurisdiction for all purposes and proposed a class and collective action settlement for court approval pursuant to *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d Cir. 2015) and Rule 23 of the Federal Rules of Civil Procedure.  *See* Dkt. No. 73-1 ("Settlement Agreement"); Dkt. No. 68 (consent form).

On May 3, 2018, the Court preliminarily approved the class action settlement and scheduled a fairness hearing for September 25, 2018.  Dkt. No. 74, at 6.  In its preliminary approval order, the Court observed that the parties had submitted a stipulation to voluntarily dismiss Terri Vegetarian LLC, Jeffrey Lapadula, and Tomer Versano ("Dismissed Defendants") but that it was "not clear why they should be dismissed with prejudice at this time."  *Id*. at 2 n.1.  The Court further noted that it would "consider [signing the stipulation] at the fairness hearing when counsel can explain why these particular Defendants are being dismissed."  *Id*.

---

[1] As explained *infra*, Cochran & Pease LLC was not a defendant named in the original action but was later added as a party to the settlement agreement.

On September 25, 2018, following the fairness hearing, the Court entered a

Final Order and Judgment dismissing the case.  Dkt. No. 84 ("Dismissal Order").  In

the Dismissal Order, the Court noted that:

> Plaintiff's counsel has explained that the entity "Cochran & Pease
> LLC" is listed in the Settlement Agreement and Notice as an employer,
> along with defendants Terri 2 LLC and Terri 3 LLC, rather than Terri
> Vegetarian LLC, because through discovery and settlement
> negotiations Plaintiff learned that Terri Vegetarian LLC was not
> involved in the operation of the restaurant commonly referred to as
> "Terri 1," and that Cochran & Pease owns and operates "Terri."  In
> addition, Plaintiff agreed to dismiss defendants Lapadula and Versano
> because they have a limited ownership interest in the corporate
> defendants, are not substantially involved in the operation of the Terri
> restaurants, and could not be considered employers under the FLSA
> and NYLL.

Id. at 2 n.2 (internal citations to the record omitted).  Consequently, the Court "so

ordered" the stipulation of voluntary dismissal "contemporaneously" with its

Dismissal Order.  Id. at 2; Dkt. No. 83.  The Dismissal Order also expressly stated

that the Court would retain jurisdiction over the case for purposes of enforcing the

Settlement Agreement.  Dismissal Order ¶ 24.

On January 4, 2021, Gomez moved to enforce the Settlement Agreement and

for entry of judgment against Defendants Cochran and Pease LLC, Terri Vegetarian

LLC, Terri 2 LLC, Terri 3 LLC, Craig Cochran, Jeffrey Lapadula, and Tomer

Versano in the amount of $307,500, and also sought $2,150 in attorneys' fees for

enforcing the Settlement Agreement.  Dkt. No. 85.[2]  Under the terms of the

---

[2] While the Settlement Agreement (at Paragraph 3.1(B)) provides for an interest
penalty of 10 percent on any outstanding late installment payment amount,

3

Settlement Agreement, Remaining Defendants agreed to pay a total of $390,000 by February 28, 2022 by paying an initial $30,000 by January 31, 2018, followed by "48 equal monthly installments of $7,500 each" beginning March 31, 2018.  Settlement Agreement ¶ 3.1.  In addition, the parties agreed that "[t]o the extent that Defendants fail to timely fund any of the installment payments . . . , a late penalty of 10% of the [] outstanding late installment payment amount, compounded monthly, ("Interest Penalty"), shall be assessed," and that "[i]n the event of Defendant's failure to cure the default, the full outstanding balance shall be due immediately, with any Interest Penalty accruing." *Id.* ¶ 3.1(B).  According to Gomez's counsel, Remaining Defendants, as of the date of the motion to enforce, had failed to comply with the terms of the settlement and had only remitted $82,500. Declaration of Anne Seelig, Esq., dated January 4, 2021 ("Seelig Decl."), Dkt. No. 87 ¶ 3; Plaintiff's Memorandum of Law in Support of Motion to Enforce Settlement Agreement, dated January 4, 2021 ("Pl. January 2021 Mem."), Dkt. No. 86 at 3–4.

Remaining Defendants never responded to Gomez's motion to enforce the settlement agreement.  However, Dismissed Defendants opposed the motion, arguing, *inter alia*, that because they were dismissed as parties to the action, they are not properly named in the motion.  Defendants' Memorandum of Law in Opposition to Motion to Enforce the Settlement Agreement, dated January 15, 2021

---

compounded monthly, Gomez does not include the penalty in the relief he seeks (or in the proposed judgment he submitted (Dkt. No. 85-2)), and accordingly, the Court will not consider it in this application.

4

("Def. January 2021 Mem."), Dkt. No. 88.  Gomez submitted a reply, in which he reaffirmed that Dismissed Defendants are parties to the Settlement Agreement and therefore proper parties to the motion to enforce it.  Plaintiff's Reply Memorandum of Law in Support of Motion to Enforce Settlement Agreement, dated January 25, 2021, Dkt. No 90.[3]

On January 13, 2021, Dismissed Defendants served Gomez with a copy of a motion for Rule 11 sanctions, which they filed on February 4, 2021 when Gomez did not withdraw Dismissed Defendants from his motion to enforce the Settlement Agreement.  Defendants' Memorandum of Law in Support of their Motion for Sanctions, dated February 4, 2021 ("Def. February 2021 Mem."), Dkt. No. 97. Dismissed Defendants also requested attorneys' fees and costs in the amount of $10,180.55 for counsel's 17.85 hours of work on both motions.  Certification of Joseph K. Jones, dated February 4, 2021 & Exhibit B, Dkt. No. 97-3.  Gomez opposed the motion on February 17, 2021.  Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Sanctions, dated February 4, 2021 ("Pl. February 2021 Mem."), Dkt. No. 98.  Briefing on the motion for sanctions was completed on February 20, 2021 with Dismissed Defendants' reply.  Defendants' Reply Memorandum of Law in Support of Their Motion to Enforce Settlement Agreement, dated February 20, 2021, Dkt. No 99.

---

[3] With the Court's permission, Dismissed Defendants also submitted a sur-reply letter, limited to addressing an additional amount of attorneys' fees that Gomez was seeking related to the anticipated sanction motion.  Dkt. No. 96.

# II. DISCUSSION

## A.    Motion to Enforce

"Actions to enforce settlement agreements are in essence, breach of contract actions governed by state law and do not themselves raise a federal question unless the court that approved the settlement retained jurisdiction." *Ream v. Berry-Hill Galleries, Inc.*, No. 16-CV-7462 (SLC), 2020 WL 5836437, at *2 (S.D.N.Y. Oct. 1, 2020) (quotation and alteration omitted) (quoting *Thurston v. Flyfit Holdings*, LLC, No. 18-CV-9044 (PAE) (SN), 2020 WL 2904065, at *2 (S.D.N.Y. June 3, 2020)). Thus, "[w]here a case has been dismissed, and the plaintiff thereafter asks the court to enforce the parties' settlement agreement, the court must first satisfy itself that it has retained ancillary jurisdiction to act." *Melchor v. Eisen & Son Inc.*, No. 15-CV-0113 (DF), 2016 WL 3443649, at *5 (S.D.N.Y. June 10, 2016) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 379–80 (1994)). "[T]o retain ancillary jurisdiction over enforcement of a settlement agreement, *Kokkonen* prescribes that a district court's order of dismissal must either (1) expressly retain jurisdiction over the settlement agreement, or (2) incorporate the terms of the settlement agreement in the order." *Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015) (citing *Kokkonen*, 511 U.S. at 381).

As previously mentioned, because the settlement arose in part under the FLSA, the Court was required to review it for adequacy and fairness under *Cheeks* before it was approved. "Where, after the requisite review, the district court enters

6

a dismissal order containing an express retention of jurisdiction to enforce the parties' settlement agreement, the court may then exercise ancillary jurisdiction and enforce the agreement according to its terms." *Romero v. New Blue Flowers Gourmet Corp.*, No. 16-CV-8753 (DF), 2021 WL 860986, at *3 (S.D.N.Y. Mar. 8, 2021) (citing *Minecci v. Carlyle at the Omni, Inc.*, 16-CV-5134 (JS) (GRB), 2019 WL 1760683, at *1 (E.D.N.Y. Mar. 21, 2019)). Additionally, "in this context, the court may proceed to enforce the agreement by entry of judgment." *Id.* (citing *Minecci*, 2019 WL 1760683, at *1–2).

Here, the Court's Dismissal Order approving the Settlement Agreement provided that "the Court retains jurisdiction over this case to administer, supervise, construe, and enforce the Settlement Agreement in accordance with its terms for the mutual benefit of the parties." Dismissal Order ¶ 24. Because the Court's ancillary jurisdiction is based on the Settlement Agreement, and as discussed below, the Dismissed Defendants had been dismissed as parties to the action, the Court finds that although it has jurisdiction to enforce the Settlement Agreement, it only has jurisdiction over the Remaining Defendants.

### 1. Remaining Defendants

"Under New York law, there are four elements to a breach of contract claim: '(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *Salto v. Alberto's Constr., LLC*, No. 17-CV-3583 (PED), 2020 WL 4383674, at *6 (S.D.N.Y.

7

July 31, 2020) (quoting *Planete Bleue Television, Inc. v. A&E Television Networks, LLC*, No. 16-CV-9317 (PGG), 2018 WL 10579873, at *7 (S.D.N.Y. Sept. 19, 2018)).[4] In this case, the record reflects that the parties entered into a settlement agreement that was approved by the Court, and that the Court expressly retained jurisdiction to enforce it.  Under the terms of the Settlement Agreement, Remaining Defendants agreed to pay $390,000 by February 28, 2022 by paying an initial $30,000 by January 31, 2018, followed by "48 equal monthly installments of $7,500 each," beginning March 31, 2018.  Settlement Agreement ¶ 3.1.  In addition, the parties agreed that "[t]o the extent that Defendants fail to timely fund any of the installment payments . . . , a late penalty of 10% of the [] outstanding late installment payment amount, compounded monthly, ("Interest Penalty"), shall be assessed," and that "[i]n the event of Defendant's failure to cure the default, the full outstanding balance shall be due immediately, with any Interest Penalty accruing." *Id.* ¶ 3.1(B).

The record demonstrates that Gomez and the class members performed their part by voluntarily agreeing to the release of their claims.  Settlement Agreement ¶ 4.1.  Remaining Defendants, on the other hand, did not satisfy their payment obligations.  Specifically, Gomez has established through admissible evidence that, as of the date of his motion, Remaining Defendants have only paid $82,500 of the

---

[4] The parties to the Settlement Agreement agreed that it "shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York."  Settlement Agreement ¶ 5.9.

$390,000 before they stopped remitting payments.  Seelig Decl. ¶ 3.  Thus, the

Court finds that Remaining Defendants are in breach of the Settlement Agreement,

that Gomez has been damaged as a result of Remaining Defendants' breach, and

that Gomez (and the class) is entitled to judgment in the full amount owed pursuant

to the Settlement Agreement's terms.[5]

## 2.  Dismissed Defendants

Gomez argues that the Settlement Agreement was "fully executed by all

parties, including [Dismissed] Defendants on March 2, 2018," which was then

"finally approved by the Court."  Pl. Reply at 4.  However, Gomez omits two vital

facts that militate against finding Dismissed Defendants to be parties to the

Settlement Agreement that was approved by the Court in its Dismissal Order.

First, the parties signaled, and the Court noted (Dkt. No. 74 at 2), that the

identification of the proper defendants was still being negotiated when they

submitted the proposed settlement agreement to the Court for approval.  Second,

because this case was subject to the Court's approval under *Cheeks*, only the

---

[5] In his proposed order, Gomez included a "failure to pay" provision under Section 198(4) of the New York Labor Law, which he cites to in a footnote but does not explain why it should apply.  Pl. January 2021 Mem. at 5 n.1; Dkt. No. 85-1 (proposed order).  However, such a provision is only "included when a court issues a judgment based upon a NYLL cause of action."  *Romero*, 2021 WL 860986, at *4 (quoting *Minecci*, 2019 WL 1757776, at *2).  As discussed above, the Court is "enforcing a settlement agreement, which is fundamentally a cause of action sounding in breach of contract."  *Id.* (quoting *Minecci*, 2019 WL 1757776, at *2).  As other courts have found in similar circumstances, the "failure to pay" provision is therefore inapplicable here.  *Id.*

*finalized* Settlement Agreement without Dismissed Defendants is enforceable.  The Court will address these facts in turn.

### a) Material Terms of the Proposed Settlement Agreement

"A party seeking to enforce a purported settlement agreement has the burden of proof to demonstrate that the parties actually entered into such an agreement." *Salto*, 2020 WL 4383674, at *4 (quoting *Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*, 447 F. Supp.2d 329, 335 (S.D.N.Y. Aug 28, 2006)).  "Under New York law, the fundamental basis of a valid, enforceable contract is a meeting of the minds of the parties, and, if there is no meeting of the minds on all essential terms, then there is no contract." *Alvarez v. Pronto Pizza & Grill, Inc.*, No. 15-CV-8277 (DF), 2017 WL 11567279, at *1 (S.D.N.Y. Apr. 6, 2017) (citing *Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362, 371-72 (2d Cir. 2003)).  "If the Court finds substantial ambiguity regarding whether [the] parties have mutually assented to all material terms, then the Court can neither find, nor enforce, a contract." *Id.* (citing *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 326 (S.D.N.Y. 2009)); *Mei Yue Gao v. Graceful Servs., Inc.*, No. 18-CV-4005 (SN), 2020 WL 8969788, at *1 (S.D.N.Y. Feb. 28, 2020)) ("[W]hether all of the terms of the alleged contract have been agreed upon is one of the significant factors in determining whether an enforceable settlement agreement has been reached." (citing *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985)).

The record reveals that at the time the Court preliminarily approved the Settlement Agreement on May 3, 2018, material terms of the Settlement Agreement (here, the proper defendants) were still being negotiated.  Specifically, in its May 3 Order, the Court noted that the parties had stipulated to voluntarily dismiss the Dismissed Defendants but that it was "not clear why they should be dismissed with prejudice at this time."  Dkt. No 74 at 2 n.1.  The Court further observed that it would "consider [signing the stipulation] at the fairness hearing when counsel can explain why these particular Defendants are being dismissed."  *Id.*  Thus, it appears that at the time the Settlement Agreement was first presented to the Court, the identification of the proper defendants was actively being negotiated.  Without a "meeting of the minds" as to whether Dismissed Defendants were even part of the Settlement Agreement, Gomez has not met his burden to establish that the Settlement Agreement is enforceable as to them.  *See, e.g., Mei Yue Gao*, 2020 WL 8969788, at *2 ("I find that Plaintiff intended to negotiate several additional material terms and that as such, there was no mutual assent or intent to be bound . . . and that the parties therefore did not reach an enforceable agreement.").  Moreover, as discussed below, it is clear from the record that all parties intended the Settlement Agreement to be enforceable *as approved by the Court* pursuant to *Cheeks* and Rule 23.[6]

---

[6] It would have been preferable if the parties had revised the Settlement Agreement to eliminate Dismissed Defendants as part of the final approval process because then they would not be listed at all.  But the fact that this was done does not

### b) Under *Cheeks*, Only the Approved Settlement Agreement is Enforceable

Because the Court is required to review and approve FLSA parties' proposed settlement agreements under *Cheeks*, "no settlement of an FLSA case is enforceable until it has been approved by a federal judge." *Velazquez v. Yoh Servs., LLC*, No. 17-CV-842 (CM), 2017 WL 4404470, at *3 (S.D.N.Y. Sept. 25, 2017); *Alvarez*, 2017 WL 11567279, at *2 n.2 ("[A]ny settlement agreement reached by the parties would have to be reviewed by the Court for fairness, and would be subject to Court approval."). As part of its Dismissal Order, the Court made clear that the parties stipulated to dismiss Dismissed Defendants and that the Court "so ordered" the stipulation "contemporaneously with the issuance of this Final Order and Judgment." Dismissal Order at 2. The Court further observed that "through discovery and settlement negotiations Plaintiff learned that Terri Vegetarian LLC was not involved in the operation of the restaurant," and that Lapadula and Versano "have a limited ownership interest in the corporate defendants, are not substantially involved in the operation of the Terri restaurants, and could not be considered employers under the FLSA and NYLL." *Id.* It is thus apparent from the plain terms of the Dismissal Order that Dismissed Defendants no longer remained parties to the finalized and approved Settlement Agreement. Therefore, to the extent Dismissed Defendants were parties to the proposed Settlement Agreement

---

weaken Dismissed Defendants' opposition to the motion in light of the stipulation dismissing them with prejudice.

on May 2, 2021, that agreement is not enforceable as against them because it was still subject to the Court's approval under *Cheeks*.  When the agreement became enforceable, Dismissed Defendants were no longer parties to the Settlement Agreement.  The Court therefore lacks ancillary jurisdiction over Dismissed Defendants.[7]

### 3. Attorneys' Fees

Gomez argues that because "both the FLSA and NYLL are fee shifting statutes, it is appropriate to award Plaintiff's counsel's fees for additional work spent on the matter," and seeks $2,150.  Pl. January 2021 Mem. at 4–5.[8]  However, this proceeding does not arise from the FLSA nor the NYLL, but from the enforcement of a settlement agreement.  Therefore, because "[t]he Court retained jurisdiction over this matter to enforce the parties' Settlement Agreement," it "must adhere to the terms of the Settlement Agreement."  *Cardoso v. Paramount Foods Inc.*, No. 15-CV-7674 (SDA), 2020 WL 8880943, at *2 (S.D.N.Y. Apr. 30, 2020)

---

[7] Even if the Court did have ancillary jurisdiction, the terms of the Dismissal Order make plain that, in being dismissed, Dismissed Defendants were no longer parties to the Settlement Agreement and therefore cannot be held responsible for Remaining Defendants' breach of the Settlement Agreement.

[8] Counsel sought an additional $7,225 in fees (Dkt. No. 90, at 7–8), based on her reply papers and Rule 11 opposition (without any certification), and cites an hourly rate of $800 for herself and an hourly rate of $275 for her paralegal.  Even if the Court were to award fees, it would not do so at the proposed rates, which far exceed those that are approved in this District in wage-and-hour cases.  *See, e.g.*, *Kim v. 511 E. 5th St., LLC*, No. 12-CV-8096 (JCF), 2016 WL 6833928, at *4 (S.D.N.Y. Nov. 7, 2016) (criticizing plaintiff's counsel and her firm for misconstruing cases to support exaggerated hourly rates).

(citing *Febus v. Guardian First Funding Grp., LLC*, 90 F. Supp. 3d 240, 245

(S.D.N.Y. 2015)).  Here, the "Settlement Agreement does not provide for attorneys'

fees and thus they may not be awarded."  *Id.* (citing *Partners for Payment Relief,*

*LLC v. Dreambuilder Investments, LLC*, No. 12-CV-1414 (RJS), 2016 WL 4205595,

at *4 (S.D.N.Y. Aug. 8, 2016)).  On the contrary, awarding attorneys' fees for the

enforcement of the Settlement Agreement is explicitly precluded by its terms.  In

the only section discussing attorneys' fees, the Settlement Agreement provides:

"After payment of the approved attorneys' fees award and costs, Defendants shall

have no additional liability for Class Counsel's attorneys' fees, expenses and costs."

Settlement Agreement ¶ 3.2(A).  *Compare Smith v. Digital Soc. Retail, Inc.*, No. 18-

CV-6602 (RA), 2019 WL 5450397, at *2 (S.D.N.Y. Oct. 24, 2019) (awarding

attorneys' fees where agreement provided that Plaintiff can "recover reasonable

attorneys' fees . . . in enforcing in Court the payment obligations under this

Agreement").  Tellingly, none of the cases Gomez cites to justify awarding attorneys'

fees involve the enforcement of settlement agreements, but rather involve the

approval of FLSA settlements.  Pl. January 2021 Mem. at 4–5.[9]

Accordingly, the Court denies Gomez's application for attorneys' fees.

---

[9] Notably, in another action to enforce an FLSA settlement agreement, plaintiff, who was represented by the same counsel in this case, also requested attorneys' fees but "after the Court directed Plaintiff to provide authority for the proposition that he could be awarded attorneys' fees for the work incurred in connection with seeking to enforce the settlement, Plaintiff informed the Court that he was withdrawing that request." *Romero*, 2021 WL 860986, at *2, n.2.

**B.     Motion for Rule 11 Sanctions**

    **1.  Legal Standard**

"Rule 11 sanctions are designed to deter baseless filings." *Goldberger Co.,*

*LLC v. Uneeda Doll Co., Ltd.*, No. 16-CV-4630 (AJP), 2017 WL 3098110, at \*4

(S.D.N.Y. July 21, 2017) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n*

*v. Albany*, 369 F.3d 91, 97 (2d Cir. 2004)).  Rule 11(b) of the Federal Rules of Civil

Procedure prohibits an attorney from presenting to the court "a pleading, written

motion, or other paper" if (1) it is being "presented for any improper purpose, such

as to harass, cause unnecessary delay, or needlessly increase the cost of litigation";

(2) the claims, defenses, and other legal contentions are not "warranted by existing

law"; or (3) the factual contentions do not "have evidentiary support."  Fed. R. Civ.

P. 11(b).  Rule 11(c) provides, that "[i]f, after notice and a reasonable opportunity to

respond, the court determines that Rule 11(b) has been violated, the court may

impose an appropriate sanction on any attorney, law firm, or party that violated the

rule or is responsible for the violation."  Fed. R. Civ. P. 11(c).  "Under Rule 11's safe

harbor provision, the subject of the sanctions motion must be served at least 21

days in advance of the filing of the sanctions motion." *Weston Cap. Advisors, Inc. v.*

*PT Bank Mutiara Tbk.*, No. 13-CV-6945 (PAC), 2019 WL 6002221, at \*4 (S.D.N.Y.

Sept. 20, 2019) (citing Fed. R. Civ. P. 11(c)(2)).[10]

---

[10] "Although the Second Circuit favors oral argument on Rule 11 sanctions motions, the district court is not obliged to hold a hearing where none has been requested." *Ferrand v. Mystique Brands LLC*, No. 20-CV-5933 (PAE), 2021 WL 119572, at \*13

"A pleading, motion or other paper violates Rule 11 either when it has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Regan v. Vill. of Pelham*, No. 19-CV-7987 (NSR), 2021 WL 1063320, at *9 (S.D.N.Y. Mar. 19, 2021) (quoting *Parnoff v. Fireman's Fund Insurance Company*, 796 F. App'x 6, 8 (2d Cir. 2019)); *Yien-Koo King v. Wang*, No. 14-CV-7694 (JFK), 2018 WL 5650005, at *3 (S.D.N.Y. Oct. 31, 2018) (citing *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 622 (2d Cir. 1991)). Crucially, "a litigant's obligations with respect to the contents of . . . papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." *Regan* 2021 WL 1063320, at *9 (quoting Fed. R. Civ. P. 11(b)-(c) Advisory Committee's Note (1993)). When deciding whether to impose sanctions, courts often consider the following factors:

> (1) whether the improper conduct was willful, or negligent; (2) whether it was part of a pattern o[f] activity, or an isolated event; (3)

---

(S.D.N.Y. Jan. 13, 2021) (citing *Margo v. Weiss*, 213 F.3d 55, 64 (2d Cir. 2000)). Accordingly, "[t]he moving party's Rule 11 motion papers can satisfy the notice requirement, and an opportunity to submit written briefs in opposition to a Rule 11 motion can constitute a sufficient opportunity to be heard." *Charles v. Levitt*, No. 15-CV-9334 (PAE), 2016 WL 3982514, at *6 (S.D.N.Y. July 21, 2016), *aff'd and remanded*, 716 F. App'x 18 (2d Cir. 2017) (citing *Margo*, 213 F.3d at 64). No request for a hearing was made in this case.

16

whether it infected the entire pleading, or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) what effect it had on the litigation process in time or expense; (6) whether the responsible person is trained in the law; (7) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case.

*Cont'l Cas. Co. v. Marshall Granger & Co., LLP*, No. 11-CV-3979 (CS), 2017 WL 1901969, at *7 (S.D.N.Y. May 9, 2017) (citing *Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239, 265 (S.D.N.Y. 2009)).[11]

"[E]ven where a court finds that Rule 11 has been violated, 'the decision whether or not to impose sanctions is a matter for the court's discretion.'" *Tantaros v. Fox News Network LLC*, No. 17-CV-2958 (GBD), 2018 WL 1662779, at *3 (S.D.N.Y. Mar. 16, 2018) (quoting *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004)). The Court's "broad discretion extends to determining the amount of the award and including an award of attorney's fees where warranted." *Charles*, 2016 WL 3982514, at *6 (internal quotation omitted) (quoting *Lawrence v. Wilder Richman Sec. Corp.*, 417 F. App'x 11, 15 (2d Cir. 2010)); *Goldberger Co., LLC*, 2017 WL 3098110, at *5 ("Sanctions may include 'nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective

---

[11] "The rule does not attempt to enumerate the factors a court should consider in deciding whether to impose a sanction . . . . [A]ll of the[ ] [factors set forth in the advisory committee's note] may in a particular case be proper considerations. The court has significant discretion in determining what sanctions, if any, should be imposed for a violation . . . ." *Microbot Med., Inc. v. All. Inv. Mgmt. Ltd.*, No. 19-CV-3782 (GBD) (RWL), 2020 WL 5755061, at *12 n.12 (S.D.N.Y. Aug. 18, 2020) (citing Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment), *adopted by* 2020 WL 5600852 (Sept. 17, 2020).

deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.'" (quoting Fed. R. Civ. P. 11(c)(4)).

### 2. Application

To begin, the procedural requirements of Rule 11 have been met. The motion for sanctions filed by Dismissed Defendants was made separately, and Gomez's counsel was provided with 21 days to withdraw Dismissed Defendants from the motion to enforce. *See* Pl. February 2021 Mem. at 3; Def. February 2021 Mem., Exhibit A. Counsel did not withdraw Dismissed Defendants from the motion, but instead repeatedly maintained that they were proper parties. However, the inclusion of Dismissed Defendants in the motion to enforce was unreasonable and warrants sanctions against Gomez's counsel.

Gomez's counsel's principal argument against sanctions is that Dismissed Defendants were part of the Settlement Agreement and therefore proper parties to the motion to enforce. Pl. February 2021 Mem. at 7. Counsel even goes as far as to contend that Dismissed Defendants' counsel acted in bad faith by requesting to dismiss this action when Dismissed Defendants were signatories to the Settlement Agreement. *Id.* However, as previously discussed, this argument has no foundation in either the facts of the case or the plain reading of the Court's Dismissal Order.

The history of the case further demonstrates the unreasonableness of including Dismissed Defendants in the motion to enforce. Gomez's counsel, who

filed the motion to enforce the Settlement Agreement, has been an attorney on the case since February 1, 2017 (Dkt. No. 20), and should have known that the reason the parties signed a stipulation dismissing Dismissed Defendants was because "through discovery and settlement negotiations Plaintiff learned that Terri Vegetarian LLC was not involved in the operation of the restaurant," and that Lapadula and Versano "have a limited ownership interest in the corporate defendants, are not substantially involved in the operation of the Terri restaurants, and could not be considered employers under the FLSA and NYLL." Dismissal Order at 2. Even if she had not been part of the settlement negotiations (and the record is not clear on the point as there is no transcript of the fairness hearing), under Rule 11, she had a responsibility to confirm that the motion to enforce the Settlement Agreement against Dismissed Defendants was properly based in fact when she filed it. When Dismissed Defendants' counsel promptly reminded Gomez's counsel by letter that they were not part of the final Settlement Agreement and had been dismissed with prejudice, she curtly responded: "Any objection you have to their inclusion may be addressed in your opposition brief." Affirmation of Anand A. Kapasi, dated January 13, 2021, Dkt. No. 97-2, Exhibit A. Instead of burdening the Court with meritless litigation, the more appropriate response would have been to withdraw Dismissed Defendants from the motion to enforce.

Moreover, it appears that this is not the first time that Gomez's counsel has either negligently or willfully included dismissed parties in motions to enforce

wage-and-hour settlement agreements.  In *Romero v. New Blue Flowers Gourmet Corp.*, where Gomez's counsel also represented the plaintiffs, the court discussed a strikingly similar set of facts:

> Plaintiff had also originally named Byung Nak Lim as a defendant in this action and had initially included him as one of the defendants as to whom the motion to enforce the settlement was directed.  The Court, however, noted that the case had already been voluntarily dismissed against this defendant and thus sought clarification from Plaintiff as to why he was now seeking a judgment against him.  By letter dated October 21, 2020, Plaintiff's counsel informed the Court that Plaintiff had decided to "withdraw . . . [his] request to enforce the settlement agreement against Byung Nak Lim."

2021 WL 860986, at *1 n.1 (internal citations to the record omitted).  However, in that case, counsel withdrew the dismissed defendant from the motion to enforce the settlement agreement only after notice from the court.  It is both inefficient and an improper use of judicial resources not only to continually file motions against clearly dismissed parties but also to refuse to remedy the action until a court issues a directive to do so.

Because Gomez's counsel has filed motions against already dismissed defendants in at least two actions (only a few months apart), and in this action has defended this meritless position in multiple submissions, sanctions are warranted. Given the circumstances, the motion to enforce the Settlement Agreement as against Dismissed Defendants violated Rule 11.  Awarding attorney fees and costs of $10,180.55 to Dismissed Defendants, as they have requested, is therefore proper.

*See, e.g.*, *Malvar Egerique v. Chowaiki*, No. 19-CV-3110 (KPF), 2020 WL 1974228, at *32 (S.D.N.Y. Apr. 24, 2020) (awarding attorneys' fees on Rule 11 motion).[12]

### III.     CONCLUSION

For the foregoing reasons, Gomez's motion to enforce the Settlement Agreement is granted in part and denied in part.  Judgment will be separately entered by the Court.  Because Jones, Wolf & Kapasi LLC are still listed as counsel of record for Terri 2 LLC, Terri 3 LLC, and Craig Cochran, the Court directs counsel to serve a copy of this Opinion and Order on those defendants, by means reasonably calculated to reach them, and to file proof of service within seven days of the date of this Opinion and Order.  In addition, Defendants Terri Vegetarian LLC, Jeffrey Lapadula, and Tomer Versano's motion for sanctions is granted, and Gomez's counsel, Lee Litigation Group, PLLC, are hereby directed to pay $10,180.55 to counsel for Dismissed Defendants within 30 days of the date of this Opinion and Order.  The Clerk of Court is respectfully directed to terminate the motions at Dkt. Nos. 85 and 97, and mark No. 85 as "granted in part and denied in part" and No. 97 as "granted."

**SO ORDERED.**

Dated: June 9, 2021
        New York, New York

JAMES L. COTT
United States Magistrate Judge

---

[12] The Court has reviewed Dismissed Defendants' time records and finds them to be reasonable, and Gomez does not challenge either the rate applied or the hours incurred.